IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ACS PRIMARY CARE PHYSICIANS SOUTHWEST, PA, HILL COUNTRY EMERGENCY MEDICAL ASSOCIATES, P.A., LONGHORN EMERGENCY MEDICAL ASSOCIATES, P.A., CENTRAL TEXAS EMERGENCY ASSOCIATES, P.A., EMERGENCY ASSOCIATES OF CENTRAL TEXAS, P.A., and EMERGENCY SERVICES OF TEXAS, P.A, | § § § § § § § § § § | No. 4:20-CV-01282     JURY |
| *Plaintiffs*, | § § | |
| v. | § § | |
| UNITEDHEALTHCARE INSURANCE COMPANY and UNITEDHEALTHCARE OF TEXAS, INC., | § § § § | |
| *Defendants*. | § § | |

---

**PLAINTIFFS' MOTION TO REMAND TO STATE COURT**

---

**LASH & GOLDBERG LLP**
Alan D. Lash*
Justin C. Fineberg*
Jonathan E. Siegelaub*
Miami Tower
100 S.E. 2nd Street, Suite 1200
Miami, FL 33131
*Pro Hac Vice to be submitted*

**AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, PC.**
John Zavitsanos
Sammy Ford IV
Michael Killingsworth
1221 McKinney, Suite 2500
Houston, TX 77010

## **TABLE OF CONTENTS**

STATEMENT OF THE NATURE & STAGE OF THE PROCEEDINGS ................................ vii

PRELIMINARY STATEMENT ...................................................................................... 1

SUMMARY OF THE ISSUES TO BE RULED UPON BY THE COURT ................................ 3

SUMMARY OF THE ARGUMENT ................................................................................ 4

BACKGROUND ....................................................................................................... 4

LEGAL STANDARD.................................................................................................. 6

ARGUMENT ........................................................................................................... 7

   I.   ONLY COMPLETE ERISA PREEMPTION YIELDS FEDERAL SUBJECT-
      MATTER JURISDICTION ................................................................................. 7

   II.   THE MEDICAL GROUPS' CLAIMS ARE NOT COMPLETELY PREEMPTED .......... 8

     A.  *Davila* Prong 1 – The Medical Groups Could Not Have Brought Their Claims Under
       ERISA ....................................................................................................... 9

       i.   The Medical Groups' Claims Do Not Fall Within the Scope of ERISA...................... 9

       ii.  The Medical Groups Do Not Enjoy ERISA Standing to Pursue Their Claims.......... 14

     B.  *Davila* Prong 2 – The Medical Groups' Claims Are Each Supported By Independent
       Legal Duties ............................................................................................ 16

   III.   THE COURT SHOULD NOT FOLLOW THE *HILL COUNTRY* DECISION,
      WHICH IS FACTUALLY INAPPOSITE AND WRONGLY DECIDED ...................... 18

CONCLUSION....................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acuna v. Brown & Root Inc.*,
   200 F.3d 335 (5th Cir. 2000) ............................................................................ 4, 6

*Aetna Health Inc. v. Davila*,
   542 U.S. 200 (2004)..................................................................................... 8, 9, 16

*Bay Area Surgical Mgmt., LLC v. United Healthcare Ins. Co.*,
   2012 WL 3235999 (N.D. Cal. Aug. 6, 2012) ................................................ 16, 17

*Bernhard v. Whitney Nat'l Bank*,
   523 F.3d 546 (5th Cir. 2008) .................................................................................. 6

*Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Grp., Inc.*,
   187 F.3d 1045 (9th Cir. 1999) ..................................................................... 15, 16

*CardioNet Inc. v. Cigna Health Corp.*,
   751 F.3d 165 (3d Cir. 2014)................................................................................... 9

*Carroll v. Lee*,
   712 P.2d 923 (Ariz. 1986)..................................................................................... 14

*Caterpillar Inc. v. Williams*,
   482 U.S. 386 (1987)................................................................................................ 7

*Christ Hosp. v. Local 1102 Health & Benefit Fund*,
   2011 WL 5042062 (D.N.J. Oct. 24, 2011).......................................................... 17

*Comprehensive Spine Care P.A. v. Oxford Health Ins. Inc.*,
   2018 WL 6445593 (D.N.J. Dec. 10, 2018).......................................................... 9, 12

*Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*,
   591 F.3d 1337 (11th Cir. 2009) ................................................................ 7, 8, 9, 10

*Doctors Med. Ctr. of Modesto, Inc. v. Gardner Trucking, Inc.*,
   2017 WL 781498 (E.D. Cal. Feb. 28, 2017)........................................................ 12

*Dukes v. U.S. Healthcare, Inc.*,
   57 F.3d 350 (3d Cir. 1995)...................................................................................... 8

*E. Coast Advanced Plastic Surgery v. AmeriHealth*,
   2018 WL 1226104 (D.N.J. Mar. 9, 2018)............................................................ 10

*Emergency Grp. of Ariz. Prof'l Corp. v. United Healthcare Inc.,*
      2020 WL 1451464 (D. Ariz. Mar. 25, 2020) ........................................................ 14

*Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund,*
      538 F.3d 594 (7th Cir. 2008) ............................................................................... 9

*Fremont Emergency Servs. (Mandavia), Ltd. v. UnitedHealthGroup, Inc.,*
      2020 WL 1970710 (D. Nev. Feb. 20, 2020) .................................................. 13, 14

*Garber v. United Healthcare Corp.,*
      2016 WL 1734089 (E.D.N.Y. May 2, 2016) ............................................. 10, 11, 12

*Giles v. NYLCare Health Plans, Inc.,*
      172 F.3d 332 (5th Cir. 1999) ............................................................................ 7, 8

*Gulf-to-Bay Anesthesiology Assocs. v. UnitedHealthCare of Fla., Inc.,*
      2018 WL 3640405 (M.D. Fla. July 20, 2018) .................................................. 10, 12

*Gutierrez v. Flores,*
      543 F.3d 248 (5th Cir. 2008) ............................................................................ 3, 6

*Hialeah Anesthesia Specialists, LLC v. Coventry Health Care of Fla., Inc.,*
      258 F. Supp. 3d 1323 (S.D. Fla. 2017) ...................................................... 10, 12, 14

*Hill Country Emergency Med. Assocs., P.A. et al. v. UnitedHealthCare Ins. Co. et al.,*
      Case No. 1:19-CV-548, Dkt. No. 18 (W.D. Tex. Dec. 10, 2019) ..................... 2, 3, 18, 19, 20

*Houston Med. Testing Servs., Inc. v. Mintzer,*
      417 S.W.3d 691 (Tex. App. 2013) ........................................................................ 13

*In re Hot-Hed Inc.,*
      477 F.3d 320 (5th Cir. 2007) ............................................................................... 6

*Johnson v. Baylor Univ.,*
      214 F.3d 630 (5th Cir. 2000) ............................................................................... 7

*Lone Star OB/GYN Assocs. v. Aetna Health Inc.,*
      579 F.3d 525 (5th Cir. 2009) ...................................................................... passim

*Long Island Thoracic Surgery, P.C. v. Building Serv. 32BJ Health Fund,*
      2019 WL 5060495 (E.D.N.Y. Oct. 9, 2019) .................................................. 10, 12

*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,*
      289 S.W.3d 844 (Tex. 2009) ................................................................................ 13

iv

*Marin Gen. Hosp. v. Modesto & Empire Traction Co.*,
  581 F.3d 941 (9th Cir. 2009) ................................................................. passim

*McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*,
  857 F.3d 141 (2d Cir. 2017) ...................................................................... 9, 16

*McKnight v. Dresser, Inc.*,
  676 F.3d 426 (5th Cir. 2012) ........................................................................... 7

*Methodist Hosps. of Dallas v. Aetna Health Inc.*,
  2014 WL 3764879 (N.D. Tex. July 30, 2014) ............................................... 10

*MHA, LLC v. Empire Healthchoice HMO, Inc.*,
  2018 WL 549641 (D.N.J. Jan. 25, 2018) ...................................................... 12

*Montefiore Med. Ctr. v. Teamsters Local 272*,
  642 F.3d 321 (2d Cir. 2011) ............................................................................ 9

*North Jersey Brain & Spine Ctr. v. Aetna Life Ins. Co.*,
  2017 WL 659012 (D.N.J. Feb. 17, 2017) ...................................................... 16

*North Jersey Brain & Spine Ctr. v. MultiPlan, Inc.*,
  2018 WL 6592956 (D.N.J. Dec. 14, 2018) .................................................... 10

*North Jersey Brain & Spine Ctr. v. United Healthcare Ins. Co.*,
  2019 WL 6317390 (D.N.J. Nov. 25, 2019) ................................................... 12

*North. Jersey Brain & Spine Ctr. v. United Healthcare Ins. Co.,*,
  2019 WL 6721652 (D.N.J. Dec. 9, 2019) ...................................................... 12

*N.J. Carpenters & the Trs. Thereof v. Tishman Constr. Corp. of N.J.*,
  760 F.3d 297 (3d Cir. 2014) ........................................................................... 16

*New Orleans & Gulf Coast Ry. Co. v. Barrois*,
  533 F.3d 321 (5th Cir. 2008) ........................................................................... 7

*Pascack Valley Hosp., Inc. v. Local 464A Welfare Reimbursement Plan*,
  388 F.3d 393 (3d Cir. 2004) ............................................................................. 9

*Premier Inpatient Partners LLC v. Aetna Health & Life Ins. Co.*,
  371 F. Supp. 3d 1056 (M.D. Fla. 2019) .................................................... 10, 12

*Quinn v. Guerrero*,
  863 F.3d 353 (5th Cir. 2017) ........................................................................... 7

*REVA, Inc. v. HealthKeepers, Inc.*,
   2018 WL 3323817 (S.D. Fla. July 6, 2018)........................................................ 12

*Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*,
   851 F.3d 530 (5th Cir. 2017) ......................................................................... 6

*Sobertec LLC v. UnitedHealth Grp., Inc.*,
   2019 WL 4201081 (C.D. Cal. Sept. 5, 2019) ....................................................... 12

*Wurtz v. Rawlings Co., LLC*,
   761 F.3d 232 (2d Cir. 2014).......................................................................... 17

**Statutes**

28 U.S.C. § 1331 .......................................................................................... 1

28 U.S.C. § 1441 .......................................................................................... 6

29 U.S.C. § 1132 ....................................................................................... 1, 14

29 U.S.C. § 1144 .......................................................................................... 8

Tex. Ins. Code § 1271.155 ............................................................................... 19

Tex. Ins. Code § 1301.0053 ............................................................................. 19

Tex. Ins. Code § 1301.155 ............................................................................... 19

**Rules**

Fed. R. Civ. P. 41 ......................................................................................... 6

## <u>STATEMENT OF THE NATURE & STAGE OF THE PROCEEDINGS</u>

This is a civil dispute in which the Plaintiffs—a series of emergency medical practices—allege that the Defendants—a health insurer and claims administrator—have paid reimbursements to the Plaintiffs at unreasonably low rates, in violation of Texas statute, the Parties' implied-in-fact agreement, and equity.  The Plaintiffs initiated this action in Texas state court.  Defendants removed the action to this Court.  (Dkt. 1.)  Defendants then filed a motion to dismiss the Complaint.  (Dkt. 5.)  Plaintiffs have filed an Amended Complaint and now move to remand the action to Texas state court.

Plaintiffs ACS Primary Care Physicians Southwest, P.A., Hill Country Emergency Medical Associates, P.A., Longhorn Emergency Medical Associates, P.A., Central Texas Emergency Associates, P.A., Emergency Associates of Central Texas, P.A., and Emergency Services of Texas, P.A. (collectively, the "Medical Groups") respectfully bring this motion ("Motion") to remand this action to the Texas District Court for the 190th District, Harris County.   As shown below, Defendants UnitedHealthCare Insurance Company and UnitedHealthCare of Texas, Inc. (collectively, "United")'s removal to this Court was improper, because there is no federal jurisdiction over the subject matter of this dispute.

## PRELIMINARY STATEMENT

This action belongs in state court.  The Medical Groups assert claims arising exclusively under Texas state law, and diversity between the Parties does not exist.  There is, accordingly, no basis for federal subject-matter jurisdiction.  But rather than defend against the Medical Groups' claims in the appropriate forum, United has improperly removed.  United argues that the doctrine of complete preemption under ERISA § 502(a)[1] effectively transforms the Medical Groups' state law claims into federal claims, thus creating federal question jurisdiction pursuant to 28 U.S.C. § 1331.  That position is meritless for multiple, independently dispositive reasons.

First, federal courts across the country, at both the district and appellate levels, are nearly unanimous in distinguishing between disputes over the rates of reimbursement paid for healthcare services rendered to ERISA plan beneficiaries ("rate-of-payment disputes") and disputes over the right to payment for such services ("right-to-payment disputes").  Only right-to-payment disputes

---

[1] "ERISA" is the Employee Retirement Income Security Act of 1974, Pub. L. 93-406, 88 Stat. 829. Section 502(a) is codified at 29 U.S.C. § 1132(a).

1

are completely preempted.  Rate-of-payment disputes, such as that detailed in the Amended Complaint, are not preempted and are routinely remanded to state court.

Second, complete ERISA preemption requires that the plaintiff have standing to assert a claim for ERISA benefits.  United contends that standing exists pursuant to its members' assignments of their health benefits to the Medical Groups.  But that argument is wholly unmoored from the Medical Groups' factual averments, which make no reference to any assignments.  To the contrary, the pleadings explicitly provide that the "[Medical Groups] . . . are not suing derivatively to enforce an ERISA plan beneficiary's claim for benefits."  (Compl. ¶ 15 n.1; Am. Compl. ¶ 16 n.2.)  And even if the Medical Groups had averred receipt of assignments, the mere existence of an assignment does not convert a claim independent of ERISA into one for ERISA benefits.  In other words, that the Medical Groups *could* have asserted ERISA claims does not foreclose their separate right to pursue other avenues of relief instead.  United must seek removal based upon the claims actually pled, not those which it believes should have been pled.

Third, complete preemption fails where the plaintiff has asserted claims predicated upon legal duties independent of ERISA.  Examples of such claims include non-ERISA statutory infractions, as well as common law claims sounding in contract, quasi-contract, and/or tort.  Here, the Medical Groups assert causes of action for violation of the Texas Insurance Code (statutory), breach of implied-in-fact contract (common law contract), and *quantum meruit* (quasi-contract).  These are archetypical examples of the independent claims having no basis in ERISA which courts routinely find are not preempted.

Finally, United's reliance in its Notice of Removal upon a recent decision of the United States District Court for the Western District of Texas, in a predecessor case involving many of the same Parties, is unavailing.  (*See* Notice of Removal ¶¶ 9-11 (citing *Hill Country Emergency*

2

*Med. Assocs., P.A. et al. v. UnitedHealthCare Ins. Co. et al.*, Case No. 1:19-CV-548, Dkt. No. 18 (W.D. Tex. Dec. 10, 2019) (Pitman, J.) ("*Hill Country*")).) The *Hill Country* Court denied the plaintiffs' motion to remand, finding their claims completely preempted. But there are critical distinctions between the *Hill Country* case and the present action. The pleadings in this action features factual allegations and legal theories—most notably pertaining to the Parties' implied-in-fact contract—which differ meaningfully from those in *Hill Country*. Moreover, as shown below, the *Hill Country* decision was erroneous on its own terms for multiple reasons, including clear misapplication of precedent and misconstruction of unambiguous statutory text. This Court should not compound those mistakes by adopting the flawed reasoning or conclusions of that readily distinguishable order.

Ultimately, as is evident upon a review of the pleadings, this is not an ERISA case. The Medical Groups do not seek recovery of ERISA benefits, and their legal claims do not require examination of ERISA plan terms or otherwise intrude upon an ERISA-governed relationship. The Medical Groups simply assert—and United disputes—that, in paying unreasonably low rates of reimbursement, United has violated Texas statutory and common law duties. Whether the Medical Groups are correct on that score is a question for a different day and a different venue. For now, this Court, bereft of jurisdiction, must grant the Motion and remand the action to state court.

## <u>SUMMARY OF THE ISSUES TO BE RULED UPON BY THE COURT</u>

The sole issue in dispute is whether the Court has jurisdiction over the subject matter of this action pursuant to the doctrine of "complete preemption." *See Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 528-30 (5th Cir. 2009). The removing defendants bear the burden of proving the existence of federal subject-matter jurisdiction. *Gutierrez v. Flores*, 543 F.3d 248,

251 (5th Cir. 2008).  Any doubts concerning federal jurisdiction must be resolved in favor of remand.  *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

## SUMMARY OF THE ARGUMENT

The Medical Groups exclusively assert claims arising under Texas state law.  United nonetheless has removed the action to federal court, arguing that the Medical Groups' claims are completely preempted by ERISA § 502(a).  Complete preemption is a judicially created doctrine which functions as an exception to the well-pleaded complaint rule.  It provides that, in certain limited spheres, the preemptive effect of federal law is so all-encompassing as to render any state law claim asserted within such sphere definitionally federal in character.  ERISA is one statute which can give rise to complete preemption.  (Point I.)  Under the governing framework, for a plaintiff medical provider's claim against a defendant payor to be completely preempted, two conditions must be satisfied: (1) the plaintiff must have been able to bring its claims under ERISA § 502(a), and (2) the legal duty allegedly violated by the defendant must be completely dependent on ERISA.  Neither requirement is met here.  The Medical Groups could not have brought their claims under ERISA because they challenge only the rates of reimbursement paid by United, rather than the right to reimbursement (Point II.A.i), and because the Medical Groups lack ERISA standing (Point II.A.ii).  The second requirement is not met because the Medical Groups' claims are predicated upon statutory and common law duties wholly independent of ERISA (Point II.B).

## BACKGROUND

The Medical Groups are emergency medical providers operating out of hospital emergency departments throughout Texas.  They provide life-saving medical care to the residents of the areas in which they operate.  (Compl. ¶¶ 1, 24; Am. Compl. ¶¶ 17, 23.)  At present, that prominently includes care to critically ill COVID-19 patients.  Pursuant to federal law, the Medical Groups are

required to medically screen and stabilize all patients who present in the emergency department, regardless of insurance status or ability to pay.  (Compl. ¶ 17; Am. Compl. ¶ 18.)

United is a health insurance company and claims administrator.  United provides health coverage for its members, which includes coverage for emergency medical care.  After the Medical Groups render emergent care to United's members, they submit claims for reimbursement to United.  For several years, United has routinely reimbursed these claims at rates substantially below the usual and customary rates for the services rendered, in violation of both the Texas Insurance Code and the Parties' implied-in-fact contract.  (Compl. ¶ 26; Am. Compl. ¶ 2.)

On April 15, 2019, several of the Medical Groups initiated the *Hill Country* action in Texas state court.  (Ex. 1.)[2]  The *Hill Country* plaintiffs asserted claims against United for violations of several provisions of the Texas Insurance Code and *quantum meruit*.  Critically, the *Hill Country* plaintiffs did not allege the existence of a contract between themselves and United and did not assert a claim for breach of contract.  (Ex. 1.)  Further, the *Hill Country* plaintiffs expressly predicated one of their statutory claims upon their status as assignees of United's members.  (Ex. 1 ¶ 50.)  United removed the *Hill Country* action based upon complete preemption, and the court denied the plaintiffs' motion to remand.  The plaintiffs subsequently withdrew the action pursuant to Federal Rule of Civil Procedure 41(a)(1).

The Medical Groups initiated this action in the Texas District Court for the 190th Judicial District, Harris County on March 4, 2020.  (Dkt. 1.)  The Complaint asserts causes of action for violation of the Texas Insurance Code (Count 1), breach of implied-in-fact contract (Count 2), and *quantum meruit* (Count 3).  (Compl. ¶¶ 31-47.)  The Medical Groups do not allege that they

---

[2] "Ex." refers to the exhibits to the April 28, 2020 Declaration of John Zavitsanos, submitted herewith.

received assignments of benefits from United's members or that their claims require them to stand in the shoes of those members.  On April 10, 2020, United removed the action to this Court.  (Dkt. 1.)  Simultaneously with this Motion, the Medical Groups submit an Amended Complaint.  The Amended Complaint streamlines and simplifies several of the Medical Groups' allegations but does not alter or amend the substantive factual bases or legal theories underpinning the pleading.

## **LEGAL STANDARD**

Title 28 U.S.C. § 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States . . . ."  Actions over which the federal district courts have original jurisdiction include those "arising under the Constitution, treaties or laws of the United States, *i.e.*, those actions presenting a federal question."  *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007) (per curiam) (quotations omitted).  A federal question exists where "there appears on the face of the complaint some substantial, disputed question of federal law."  *Id.*  And "[t]he defendant seeking removal bears the burden of demonstrating that a federal question exists."  *Gutierrez*, 543 F.3d at 251.  Any "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."  *Acuna*, 200 F.3d at 339.  Because removal "raises significant federalism concerns, the removal statute is strictly construed . . . ."  *Gutierrez*, 543 F.3d at 251.

The well-pleaded complaint rule provides that "a federal court does not have federal question jurisdiction unless a federal question appears on the face of the plaintiff's well-pleaded complaint."  *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 535 (5th Cir. 2017).  Moreover, "a plaintiff is master of his complaint and may generally allege only a state law cause of action even where a federal remedy is also available."  *Bernhard v. Whitney Nat'l Bank*,

523 F.3d 546, 551 (5th Cir. 2008).  If the plaintiff "confine[s] his arguments to those arising under state law . . . there is no basis for federal jurisdiction.  Further, anticipation of a federal defense is insufficient to establish federal-question jurisdiction." *Quinn v. Guerrero*, 863 F.3d 353, 359 (5th Cir. 2017).  It is "settled law that a case may not be removed to federal court on the basis of a federal defense." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987).

## ARGUMENT

## I.    ONLY COMPLETE ERISA PREEMPTION YIELDS FEDERAL SUBJECT-MATTER JURISDICTION

ERISA is "one of only a few federal statutes under which two types of preemption may arise: conflict preemption and complete preemption." *Conn. State Dental Ass'n v. Anthem Health Plans, Inc*., 591 F.3d 1337, 1343 (11th Cir. 2009).  These two forms of preemption are doctrinally distinct.  Complete preemption "presents a narrow exception to the well-pleaded complaint rule." *McKnight v. Dresser, Inc.*, 676 F.3d 426, 430 (5th Cir. 2012).  It exists where Congress "so completely preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir. 2000).  The guiding determination under a complete preemption analysis "is whether Congress intended the federal cause of action to be the exclusive cause of action for the particular claim asserted under state law." *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 331 (5th Cir. 2008).  If so, then federal jurisdiction exists and removal is permitted.  *Id.*

Unlike complete preemption, "ordinary" or "conflict" preemption does not confer federal question jurisdiction.  *McKnight*, 676 at 430.  "Rather than transmogrifying a state cause of action into a federal one—as occurs with complete preemption—conflict preemption serves as a *defense* to a state action." *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999).  Conflict preemption, as an affirmative defense with no jurisdictional application, provides no basis for

removal.  *Id.*

ERISA contains both complete and conflict preemption provisions.  ERISA complete preemption is derived from § 502(a), in which Congress enacted a "comprehensive civil-enforcement scheme for employee welfare benefit plans . . . ."  *Lone Star*, 579 F.3d at 529.  This is distinct from ERISA's conflict preemption provision—§ 514(a)—which directs that "this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ."  29 U.S.C. § 1144(a).  Critically these doctrines are not coextensive in reach.  "Complete preemption is narrower than [conflict] ERISA preemption . . . . Therefore, a state-law claim may be defensively preempted under § 514(a) but not completely preempted under § 502(a)."  *Conn. Dental*, 591 F.3d at 1344 (brackets omitted).

Because only complete preemption—not conflict preemption—yields federal subject-matter jurisdiction, United must establish that that the Medical Groups' claims are completely preempted in order to avoid remand.  Conflict preemption is irrelevant in the removal context.  *See Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 355 (3d Cir. 1995) ("When the doctrine of complete preemption does not apply but the plaintiff's state law claim is arguably preempted under § 514(a), the district court . . . lacks power to do anything other than remand to the state court where the preemption issue can be addressed and resolved.").

## II.    THE MEDICAL GROUPS' CLAIMS ARE NOT COMPLETELY PREEMPTED

In *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), the Supreme Court established a two-part framework governing complete ERISA preemption.  Under *Davila*, complete preemption obtains only where: (1) a plaintiff "could have brought his claim under ERISA § 502(a)(1)(B)," and (2) "no other independent legal duty . . . is implicated by a defendant's actions."  *Id.* at 210.

The test is conjunctive; a claim is completely preempted only if both prongs are satisfied.[3] *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 146 (2d Cir. 2017). Multiple federal circuits, including the Fifth Circuit, have analyzed and applied this framework. *See Lone Star*, 579 F.3d at 529; *Pascack Valley Hosp., Inc. v. Local 464A Welfare Reimbursement Plan*, 388 F.3d 393, 399 (3d Cir. 2004); *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 598 (7th Cir. 2008); *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 946-47 (9th Cir. 2009); *Conn. Dental*, 591 F.3d at 1345; *Montefiore*, 642 F.3d at 328.  As shown below, neither *Davila* prong is satisfied here.

## A. *Davila* Prong 1 – The Medical Groups Could Not Have Brought Their Claims Under ERISA

*Davila* Prong 1 looks to whether the plaintiff "could have brought his claim under ERISA § 502(a)(1)(B)."  542 U.S. at 210.  To satisfy this element, two requirements must be met: the asserted claims must fall within the scope of ERISA and the plaintiff must have standing to sue under ERISA.  *Conn. Dental*, 591 F.3d at 1350.

### i. The Medical Groups' Claims Do Not Fall Within the Scope of ERISA

Multiple appellate courts, including the Fifth Circuit, have held that claims which challenge the rates of reimbursement paid for covered healthcare services, rather than the right to reimbursement for such services, do not fall within the scope of § 502(a)(1)(B).  *Lone Star*, 579 F.3d at 530-31; *Montefiore*, 642 F.3d at 325; *CardioNet Inc. v. Cigna Health Corp.*, 751 F.3d 165,

---

[3] A number of courts have further disaggregated the first *Davila* prong into two subparts.  *See, e.g., Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 328 (2d Cir. 2011); *Conn. Dental*, 591 F.3d at 1350; *Comprehensive Spine Care P.A. v. Oxford Health Ins. Inc.*, 2018 WL 6445593, at *2 (D.N.J. Dec. 10, 2018).  These courts find that *Davila* Prong 1 is satisfied only where: (1) the plaintiff is the type of party who could bring a claim pursuant to ERISA § 502(a)(1)(B), *i.e.*, the plaintiff must have ERISA standing; and (2) the actual claim asserted by the plaintiff can be construed as a colorable claim for ERISA benefits, *i.e.* the claim falls within the scope of § 502(a)(1)(B).  *Id.*

177-78 (3d Cir. 2014); *Conn. Dental*, 591 F.3d at 1349-50.  Here, the Medical Groups explicitly plead that they challenge only rates of reimbursement on claims which Defendants have adjudicated as payable and actually paid, not the right to reimbursement for those claims.[4]  (Compl. ¶ 28; Am. Compl. ¶ 27.)  As such, the claims asserted in this action do not fall within the scope of ERISA, and the Court should grant the Amended Motion for this reason alone.  Indeed, federal district courts routinely remand cases removed based upon complete ERISA preemption where the plaintiff challenges only rates of reimbursement.  *See, e.g., Garber v. United Healthcare Corp.*, 2016 WL 1734089, at *3-5 (E.D.N.Y. May 2, 2016); *Long Island Thoracic Surgery, P.C. v. Building Serv. 32BJ Health Fund*, 2019 WL 5060495, at *2 (E.D.N.Y. Oct. 9, 2019); *Premier Inpatient Partners LLC v. Aetna Health & Life Ins. Co.*, 371 F. Supp. 3d 1056, 1068-74 (M.D. Fla. 2019); *Gulf-to-Bay Anesthesiology Assocs. v. UnitedHealthCare of Fla., Inc.*, 2018 WL 3640405, at *3 (M.D. Fla. July 20, 2018); *Hialeah Anesthesia Specialists, LLC v. Coventry Health Care of Fla., Inc.*, 258 F. Supp. 3d 1323, 1327-30 (S.D. Fla. 2017); *N. Jersey Brain & Spine Ctr. v. MultiPlan, Inc.*, 2018 WL 6592956, at *7 (D.N.J. Dec. 14, 2018); *E. Coast Advanced Plastic*

---

[4] United apparently has combed the universe of disputed claims for reimbursement put forward by the *Hill Country* plaintiffs and identified several which were denied, rather than deemed payable and paid.  (Notice of Removal ¶¶ 5-7.)  Taking a logical leap, United concludes that the present action must actually be a right-to-payment case, rather than a rate-of-payment case.  (Notice of Removal ¶ 8.)  But several errant claims (out of thousands) does not change the nature of the dispute.  Moreover, the actions of the *Hill Country* plaintiffs have no application to this case.  *See Methodist Hosps. of Dallas v. Aetna Health Inc.*, 2014 WL 3764879, at *5-7 (N.D. Tex. July 30, 2014) (rejecting argument that claims which had been partially denied and were submitted to insurer as exemplar claims prior to litigation rendered the subsequent litigation a right-to-payment dispute, where complaint did not put those claims at issue).

In any event, so that there is no confusion: the Medical Groups expressly disclaim any right to recover based upon claims for reimbursement which have been denied.  The Medical Groups only dispute the reimbursement levels provided by United on claims deemed payable and actually paid.  Upon commencement of discovery in this action, the Medical Groups will provide United with a spreadsheet identifying the disputed claims.  Should United find any denied claims mistakenly included in the spreadsheet, it should notify the Medical Groups who will promptly remove them.

*Surgery v. AmeriHealth*, 2018 WL 1226104, at *3 (D.N.J. Mar. 9, 2018).

United argues in its Notice of Removal, as it did in *Hill Country*, that the right-to-payment / rate-of-payment distinction does not apply to situations where the plaintiff medical provider lacks a participating-provider agreement with the defendant payor, *i.e.* situations where the plaintiff is an "out-of-network provider." (*See* Notice of Removal ¶ 9.) That contention rests upon an erroneous reading of the Fifth Circuit's *Lone Star* decision. *Lone Star* involved a provider's assertion of claims under the Texas Prompt Pay Act, based upon the defendant payor's failure to promptly reimburse the plaintiff at the rates set forth in their provider agreement. 579 F.3d at 529. The *Lone Star* Court held that "[a] claim that implicates the *rate* of payment as set out in the Provider Agreement, rather than the *right* to payment under the terms of the benefit plan, does not run afoul of *Davila* and is not preempted by ERISA." 579 F.3d at 530. But, critically, the court justified this conclusion as follows:

> While Aetna is correct that any determination of benefits under the terms of the plan—i.e., what is 'medically necessary'; or a 'Covered Service'—does fall within ERISA, Lone Star's claims are entirely separate from coverage and arise out of the independent legal duty contained in the contract and the [Prompt Pay Act].

*Id.* at 531.

In other words, the salient condition animating the *Lone Star* holding was that the claims at issue arose from legal duties independent of the terms of the ERISA plans. While the source of one of those duties happened to be an express, written provider agreement, substituting an alternative, independent source of legal duty—such as a state statute, an implied agreement, a tort, an equitable theory etc.—in place of such an agreement would not alter the analysis. And, in fact, federal courts regularly conclude that claims asserted by out-of-network medical providers are not completely preempted where they challenge only rates of payment, rather than the right to payment. *See, e.g., Garber*, 2016 WL 1734089, at *4 ("The absence of a separate written

11

agreement between Plaintiff and United concerning reimbursement . . . does not on its own require a characterization of this case as a 'right to payment' dispute subject to ERISA preemption."); *Long Island Thoracic Surgery*, 2019 WL 5060495, at *2 (explicitly rejecting argument that the right-to-payment versus rate-of-payment analysis does not apply where a provider is out of network); *Premier Inpatient*, 371 F. Supp. 3d at 1068-74 (same, noting that "no part of *Conn. State Dental* supports the proposition that an express written provider agreement must be present before the rate-of-payment/right-of-payment test can apply and that, in the absence of a written agreement, any claim for payment must be preempted."); *Hialeah*, 258 F. Supp. 3d at 1327-30 (same); *REVA, Inc. v. HealthKeepers, Inc.*, 2018 WL 3323817, at *3-4 (S.D. Fla. July 6, 2018) ("Although a contract between the Parties—written or oral—is not alleged, such lack of an agreement does not render REVA's claims completely preempted by ERISA."); *Gulf-to-Bay*, 2018 WL 3640405, at *3 (remanding rate-of-payment dispute between out-of-network provider and payor); *Comprehensive Spine*, 2018 WL 6445593, at *2 (same); *N. Jersey Brain & Spine Ctr. v. United Healthcare Ins. Co.*, 2019 WL 6317390, at *5 (D.N.J. Nov. 25, 2019), R&R adopted, 2019 WL 6721652 (same); *MHA, LLC v. Empire Healthchoice HMO, Inc.*, 2018 WL 549641, at *3 (D.N.J. Jan. 25, 2018) (same); *Sobertec LLC v. UnitedHealth Grp., Inc.*, 2019 WL 4201081, at *4 (C.D. Cal. Sept. 5, 2019) (same); *Doctors Med. Ctr. of Modesto, Inc. v. Gardner Trucking, Inc.*, 2017 WL 781498, at *3-4 (E.D. Cal. Feb. 28, 2017) (same).  United is undoubtedly aware of this jurisprudence, as its affiliates have been the defendants in many of the cases.  *See, e.g., Garber*, 2016 WL 1734089; *Gulf-to-Bay*, 2018 WL 3640405; *N. Jersey Brain & Spine*, 2019 WL 6317390; *Sobertec*, 2019 WL 4201081.

In any event, even if the right-to-payment / rate-of-payment distinction applied solely to cases involving a contract between the parties (which it does not), such limitation would be of no

moment here, as the Medical Groups have alleged the existence of a contract (Am. Compl. ¶ 37) and asserted a claim for its breach (Am. Compl. ¶¶ 36-40).[5]  United may try to distinguish this case by noting that the Medical Groups rely upon an implied-in-fact contract, rather than an express contract.  But such argument fails because, under applicable state law, "the legal effect[s] of express and implied-in-fact contracts are identical; the distinction is based on the way in which mutual assent is manifested." *Houston Med. Testing Servs., Inc. v. Mintzer*, 417 S.W.3d 691, 698 (Tex. App. 2013) (quoting 1 Williston, *A Treatise on the Law of Contracts* § 1:5 (Richard Lord ed., 4th ed. 1990)) (brackets omitted).  In other words, "[t]he difference between contracts formed through express promises and those formed through implied promises is the means by which the contracts are formed," not the validity or enforceability of the contracts upon formation.  *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 850 (Tex. 2009).

In fact, in a recent analogous dispute between affiliates of the Medical Groups and affiliates of United, a federal district court in Nevada explicitly rejected United's "attempts to distinguish the implied-in-fact contract from other types of contracts referenced in the case law."  *See Fremont Emergency Servs. (Mandavia), Ltd. v. UnitedHealthGroup, Inc.*, ___ F. Supp. 3d ___, 2020 WL 1970710, at *3 (D. Nev. Feb. 20, 2020).  The Nevada court held that the right-to-payment / rate-of-payment framework governed—despite the absence of an express agreement—and it

---

[5] In the Notice of Removal, United—citing the original Complaint—states that "Plaintiffs allege they have no contracts with Defendants and, as such, are non-network providers," (Notice of Removal ¶ 2) and "Plaintiffs admit they do not have their own contracts with Defendants" (Notice of Removal ¶ 9).  But the original Complaint includes a claim for breach of implied-in-fact contract (Compl. ¶¶ 37-40), a cause of action necessarily predicated upon the existence of an implied-in-fact contract.  Any averments in the Complaint that the Medical Groups do not have contracts with United clearly were meant to indicate that the Medical Groups lack express, written provider agreements, as is also alleged in the Amended Complaint.  (Am. Compl. ¶ 21.)  Thus, if United were to contend that the Amended Complaint somehow contradicts the original Complaint or meaningfully alters the Medical Groups' factual bases or substantive theories, such argument would be unavailing.

13

determined that the plaintiffs' implied-in-fact contract claim challenged only the right to payment. *Id.* *2-3.  The court remanded the action on that basis.  *Id.*  The Nevada case is indistinguishable from the present dispute, and this Court should adopt its well-reasoned analysis.  *See also Hialeah*, 258 F. Supp. 3d at 1329 (applying right-to-payment / rate-of-payment framework to claim for breach of implied-in-fact contract).[6]

Because the Medical Groups' claims do not fall within the scope of ERISA, the Court should remand this action.

### ii.  The Medical Groups Do Not Enjoy ERISA Standing to Pursue Their Claims

*Davila* Prong 1 is unsatisfied for the additional reason that the Medical Groups lack ERISA standing.  Section 502(a)(1)(B) confers standing to bring a benefits-due action upon plan "participant[s]" and "beneficiar[ies]."  29 U.S.C. § 1132(a)(1)(B).  The Medical Groups are neither.  United asserts that the Medical Groups enjoy derivative standing because they received assignments of benefits from their patients.  (Notice of Removal ¶ 5 n.4.)  But the Medical Groups have explicitly pled that they pursue claims based upon duties owed directly to them, not derivative

---

[6] United relies upon a recent decision from the District of Arizona, in which the court denied a motion to remand.  (*See* Notice of Removal ¶ 9 (citing *Emergency Grp. of Ariz. Prof'l Corp. v. United Healthcare Inc.,* 2020 WL 1451464 (D. Ariz. Mar. 25, 2020)).)  But the Arizona decision is analytically unsound, and this Court should not consider it persuasive.  The Arizona court acknowledged controlling Ninth Circuit precedent holding that a medical provider's claim based upon an alleged oral contract challenged only the rate of payment and therefore was not completely preempted.  *Id.* at *6 (citing *Marin*, 581 F.3d at 947-48).  But it distinguished *Marin* by noting that the plaintiffs in the Arizona case alleged an implied-in-fact contract, rather than an oral contract.  *Id.* ("Extending *Marin General Hospital* to achieve remand under an implied-in-fact contract is, however, a bridge to [*sic*] far.")  This arbitrary distinction contravenes well-settled law providing that in Arizona—as in Texas—an implied-in-fact contract has the same effect as an express contract (written or oral).  *See Carroll v. Lee*, 712 P.2d 923, 926 (Ariz. 1986) (en banc) ("In Arizona we recognize implied contracts, and there is no difference in legal effect between an express contract and an implied contract.").  Moreover, the Arizona court apparently overlooked that the *Marin* plaintiffs had asserted a claim for breach of implied-in-fact contract in addition to their claim for breach of oral contract.  *Marin*, 581 F.3d at 947.  The Arizona decision is currently on appeal, where it is unlikely to survive scrutiny.

claims based upon duties owed to their patients.  (Compl. ¶ 15 n.1; Am. Compl. ¶ 16 n.2.)  The law is clear that "where the basis of the suit is entirely independent of the ERISA plan, and thus of the plan member, an assignment of benefits from the patient cannot confer standing."  *Lone Star*, 579 F.3d at 529 n.3.  *See also Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1052 (9th Cir. 1999) ("[W]e find no basis to conclude that the mere fact of assignment converts the Providers' claims into claims to recover benefits under the terms of an ERISA plan.").

The Ninth Circuit's *Marin* decision is highly instructive.  In that case, the healthcare provider plaintiff asserted state law claims for breach of implied-in-fact contract, breach of oral contract, negligent misrepresentation, *quantum meruit*, and estoppel.  581 F.3d at 944.  The defendant removed based upon complete ERISA preemption, arguing that the first *Davila* prong was satisfied because the provider allegedly had ERISA standing under an assignment of benefits.  *Id.* at 949.  The Ninth Circuit disagreed, concluding that because the provider had asserted claims based upon a purported oral contract with the defendant, the relevant legal obligation "does not stem from the ERISA plan, and the [provider] is therefore not suing as an assignee of an ERISA plan participant or beneficiary . . . it is suing in its own right pursuant to an independent obligation."  *Id.* at 948.  The Ninth Circuit considered and squarely rejected the argument that United makes here: that because the provider plaintiff allegedly obtained an assignment of benefits, it was prevented from seeking relief under state law:

> Second, defendants argue that because the Hospital was assigned the patient's rights to payment under his ERISA plan, it was prevented from seeking additional payment under state law.  That is, they argue that because the Hospital could have brought a suit under § 502(a)(1)(B) for payments owed to the patient by virtue of the terms of the ERISA plan, this is the *only* suit the Hospital could bring.  This argument is inconsistent with our analysis in *Blue Cross.*  There we concluded that, even though the Providers had received an assignment of the patient's medical rights and hence could have brought a suit under ERISA, there was "no basis to

> conclude that the mere fact of assignment converts the Providers' claims [in this case] into claims to recover benefits under the terms of an ERISA plan." 187 F.3d at 1052.
>
> We conclude that the Hospital's state-law claims based on its alleged oral contract with [defendant] were not brought, and could not have been brought, under § 502(a)(1)(B). Therefore, the Hospital's state-law claims do not satisfy the first prong of *Davila.*

*Id.* at 949. In other words, that the plaintiff could have but chose not to assert a derivative claim for ERISA benefits did not prevent it from instead asserting non-ERISA claims based on separate legal obligations owed to it directly. *See also Bay Area Surgical Mgmt., LLC v. United Healthcare Ins. Co.*, 2012 WL 3235999, at *4 (N.D. Cal. Aug. 6, 2012) (no ERISA standing where causes of action "arise from the alleged oral contract between [plaintiff] and United"); *N. Jersey Brain & Spine Ctr. v. Aetna Life Ins. Co.*, 2017 WL 659012, at *4-5 (D.N.J. Feb. 17, 2017) (no ERISA standing where "[plaintiff] is not seeking relief as an assignee of an ERISA plan's benefits, but pursuing recovery under the terms of an implied contract between it and Aetna.").

Here, the Medical Groups assert claims based upon statutory, contractual, and quasi-contractual legal obligations independent of any ERISA plans. Assignments of benefits, to the extent they exist and are effective, would not convert the claims pled into claims for ERISA benefits. For this reason alone, the Court should remand this action.

## B. *Davila* Prong 2 – The Medical Groups' Claims Are Each Supported By Independent Legal Duties

*Davila* Prong 2 looks to whether an independent legal duty is implicated by the defendant's actions. 542 U.S. at 210. "A legal duty is independent if it is not based on an obligation under an ERISA plan, or it would exist whether or not an ERISA plan existed." *N.J. Carpenters & the Trs. Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 303 (3d Cir. 2014). Courts routinely hold that claims predicated upon duties imposed by state statutory and common law do not satisfy *Davila* Prong 2. *See, e.g., McCulloch*, 857 F.3d at 150 (second *Davila* prong unsatisfied because

"[plaintiff's] promissory-estoppel claim against Aetna arises not from an alleged violation of some right contained in the plan, but rather from a freestanding state-law duty grounded in conceptions of equity and fairness."); *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 243 (2d Cir. 2014) ("[W]hile defendants' reimbursement claims relate to plaintiffs' plans, this is not the test for complete preemption.  Plaintiffs' claims do not derive from their plans or require investigation into the terms of their plans; rather, they derive from [a state statute]."); *Bay Area Surgical*, 2012 WL 3235999, at *4 (second *Davila* prong unsatisfied because plaintiff alleging claim under an oral agreement "is suing on its own right pursuant to an independent obligation, and its claims would exist regardless of an ERISA plan."); *Christ Hosp. v. Local 1102 Health & Benefit Fund*, 2011 WL 5042062, at *4 (D.N.J. Oct. 24, 2011) (second *Davila* prong unsatisfied where claims "depend[ed] on the operation of a third-party contract" between plaintiff medical provider and defendant ERISA plan, rather than on the terms of the ERISA plan).

Once again, *Marin* is analogous.  The *Marin* Court held that legal and equitable claims asserted by a healthcare provider plaintiff based upon a purported contract that was never reduced to writing—similar to the common law claims asserted in this action—were supported by an independent legal duty because they were "in no way based on an obligation under an ERISA plan" and "would exist whether or not an ERISA plan existed."  581 F.3d at 950.  Here too, the Medical Groups' claims are based upon obligations imposed by Texas state law and in no way depend upon the existence of an ERISA plan.  *See also Lone Star*, 579 F.3d at 532 ("*Davila* also does not support the proposition that mere reference to or consultation of an ERISA plan in order to determine a rate of pay is sufficient for preemption . . . . [I]n seeking remedies under the Texas Prompt Pay Act, Lone Star is not seeking relief that 'duplicates, supplements, or supplants' that provided by ERISA.").

17

Because *Davila* Prong 2 is unsatisfied, the Court should grant the Motion and remand this action to state court.

## III.    THE COURT SHOULD NOT FOLLOW THE *HILL COUNTRY* DECISION, WHICH IS FACTUALLY INAPPOSITE AND WRONGLY DECIDED

United will rely heavily upon the *Hill Country* decision, which found that the plaintiffs' statutory claim under the Texas Insurance Code and *quantum meruit* claim were completely preempted. But *Hill Country* is unpersuasive for numerous reasons. Factually, the allegations in that case differed from those featured in this action. The *Hill Country* plaintiffs did not aver the existence of an implied-in-fact contract between themselves and United and thus did not assert a claim for breach of contract. (Ex. 1.) And the *Hill Country* analysis is largely predicated upon this absence of an agreement, a condition which led the court to conclude (wrongly) that the plaintiffs' right to recover must necessarily "flow[ ] derivatively from each insured's rights under the terms of their insurance plans . . . ." *Hill Country* at 7. This focus on the non-contractual relationship between the parties permeates the entire decision. The result undoubtedly would have been different if—as here— the plaintiffs had alleged a contract.

Moreover, the *Hill Country* Court erred in its legal analysis. First, the court held that the right-to-payment / rate-of-payment distinction applies only where the parties are subject to an express provider agreement. *Id.* at 6-7. As explained above, that conclusion is doctrinally unsound and contrary to the overwhelming weight of authority. Worse, the court's analysis of *Davila* Prong 2 is marred by an obvious misreading of clear statutory text. As here, the *Hill Country* plaintiffs asserted a claim under the HMO, EPO, and PPO[7] provisions of the Texas Insurance Code. (Ex. 1 ¶¶ 46-48.) Those statutes provide as follows:

---

[7] An "HMO" is a health maintenance organization. An "EPO" is an exclusive provider organization. A "PPO" is a preferred provider organization.

HMO statute: "A health maintenance organization shall pay for emergency care performed by non-network physicians or providers at the usual and customary rate or at an agreed rate."  Tex. Ins. Code § 1271.155(a).

EPO statute: "If an out-of-network provider provides emergency care . . . the issuer of the plan shall reimburse the out-of-network provider at the usual and customary rate or at a rate agreed to by the issuer and the out of network provider . . . ."  Tex. Ins. Code § 1301.0053(a).

PPO statute: "If an insured cannot reasonably reach a preferred provider, an insurer shall provide reimbursement for the following emergency care services at the usual and customary rate or at an agreed rate and at the preferred level of benefits until the insured can reasonably be expected to transfer to a preferred provider."  Tex. Ins. Code § 1301.155(b).

The *Hill Country* Court highlighted the PPO statute's "at the preferred level of benefits" language, finding that phraseology to indicate that "these statutes still link reimbursement to either a plan's terms or a separate provider agreement."  *Hill Country* at 9.  This erroneous interpretation reflects a misunderstanding of the operation of these statutes and the health plans they regulate.

A PPO plan, by design, provides coverage for both in-network and out-of-network medical services, but may provide for different patient cost-share (co-pays, deductibles, or co-insurance) (*i.e.*, "benefits") for services performed by in-network (*i.e.*, "preferred") providers.   The significance of the "at the preferred level of benefits" language is to prohibit any such differential in situations where an insured is facing a medical emergency and cannot "reasonably reach" a preferred provider.  That provision has nothing to do with the out-of-network rate calculation, which is governed by the preceding clause: "an insurer shall provide reimbursement . . . at the usual and customary rate or at an agreed rate . . . ."  The disjunctive phrasing—"at the usual and customary rate **or** at an agreed rate"—followed by the conjunctive "***and*** at the preferred level of

19

benefits," clearly denotes that the two clauses impose distinct obligations.  The first clause governs the rate-of-payment calculation between the medical provider and the insurer, and it makes no reference to plan terms.  The second clause imposes a separate requirement governing the relationship between insurer and insured: that plans cannot distinguish between in-network and out-of-network "level[s] of benefits" in their coverage of emergency medical care.  Moreover, the *Hill Country* Court overlooked that "at the preferred level of benefits" is nowhere to be found in the HMO or EPO statutes.[8]

Ultimately, the *Hill Country* Court concluded—through a misreading of the text—that the relevant Insurance Code provisions link the statutorily mandated out-of-network reimbursement rates to plan benefit determinations.[9]  This Court should not repeat that mistake, should not adopt the flawed reasoning, and should instead interpret the statute as written.[10]

## CONCLUSION

For all the foregoing reasons, the Court should grant this Motion and remand the action to Texas state court.

---

[8] That omission is logical, as HMO and EPO plans generally do not provide out-of-network benefits.  As such, there is no intrinsic discrimination in benefit levels to regulate.

[9] The error undoubtedly was facilitated by United's misleading quotation of the statute in its *Hill Country* briefing, which selectively omits the relevant text.  (Ex. 2 at 4 ("The statute actually states that, if an insured cannot reasonably reach a preferred provider, the insurer shall provide reimbursement for out-of-network emergency care services 'at the preferred level of benefits' until the insured can transfer to a preferred provider."))  Regrettably, United attempts the same deception here.  (Notice of Removal ¶ 10.)

[10] Equally misguided is *Hill Country*'s conclusion that the *quantum meruit* claim—a claim necessarily arising from principles of equity and fairness grounded in Texas state law—somehow does not rely upon an independent duty imposed by Texas state law.

Dated: April 28, 2020
      Houston, Texas

Respectfully submitted,

*/s/ John Zavitsanos*
John Zavitsanos, attorney-in-charge
Texas Bar No. 22251650
Federal ID No. 9122
jzavistanos@azalaw.com
Sammy Ford IV
Texas Bar No. 24061331
Federal ID No. 950682
sford@azalaw.com
Michael Killingsworth
Texas Bar No. 24110089
Federal ID No. 950682
mkillingsworth@azalaw.com
**AHMAD, ZAVITSANOS, ANAIPAKOS,**
    **ALAVI & MENSING, PC.**
1221 McKinney, Suite 2500
Houston, Texas 77010
T: 713-655-1101
F: 713-655-0062


**ALAN D. LASH***
Florida Bar No. 510904
alash@lashgoldberg.com
**JUSTIN C. FINEBERG***
Florida Bar No. 0053716
jfineberg@lashgoldberg.com
**JONATHAN E. SIEGELAUB***
Florida Bar No. 1019121
jsiegelaub@lashgoldberg.com
**LASH & GOLDBERG LLP**
Miami Tower, Suite 1200
100 Southeast Second Street
Miami, Florida 33131
T: 305-347-4040
F: 305-347-4050

* *Pro Hac Vice* applications to be submitted

**ATTORNEYS FOR PLAINTIFFS**

21

## <u>CERTIFICATE OF CONFERRAL</u>

I HEREBY CERTIFY that on April 27, 2020, I conferred with Don Colleluori, counsel for Defendants, regarding the issues presented in the foregoing Motion. The parties could not agree that the Court does not have jurisdiction over the subject matter of this dispute. The opposed Motion is, accordingly, presented to the Court for a determination.

By: /s/ Justin C. Fineberg
      **Justin C. Fineberg**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 28, 2020, a true and correct copy of this document has been filed electronically via the Court's CM/ECF filing system and subsequently all counsel in this matter deemed to accept service electronically will be notified via the Court's CM/ECF filing system.

Andrew G. Jubinsky
Donald Colleluori
FIGARI + DAVENPORT LLP
901 Main Street, Suite 3400
Dallas, Texas 75202
*Counsel for Defendants*

By: */s/ John Zavitsanos*
**John Zavitsanos**

23