IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

<table>
<tr><td>ACS PRIMARY CARE PHYSICIANS SOUTHWEST, PA, HILL COUNTRY EMERGENCY MEDICAL ASSOCIATES, P.A., LONGHORN EMERGENCY MEDICAL ASSOCIATES, P.A., CENTRAL TEXAS EMERGENCY ASSOCIATES, P.A., EMERGENCY ASSOCIATES OF CENTRAL TEXAS, P.A., and EMERGENCY SERVICES OF TEXAS, P.A,<br><br>    *Plaintiffs*,<br><br>v.<br><br>UNITEDHEALTHCARE INSURANCE COMPANY and UNITEDHEALTHCARE OF TEXAS, INC.,<br><br>    *Defendants*.</td><td>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§</td><td>No. 4:20-CV-01282<br><br>JURY</td></tr>
</table>

---

**PLAINTIFFS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR MOTION TO REMAND TO STATE COURT**

---

| | |
|---|---|
| **LASH & GOLDBERG LLP**<br>Alan D. Lash*<br>Justin C. Fineberg*<br>Jonathan E. Siegelaub*<br>Miami Tower<br>100 S.E. 2nd Street, Suite 1200<br>Miami, FL 33131<br>*Pro Hac Vice to be submitted* | **AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, PC.**<br>John Zavitsanos<br>Sammy Ford IV<br>Michael Killingsworth<br>1221 McKinney, Suite 2500<br>Houston, TX 77010 |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 4

   I.   *DAVILA* PRONG 1 – THE MEDICAL GROUPS COULD NOT HAVE BROUGHT
       THEIR CLAIMS UNDER ERISA ..................................................................... 4

      A.   The Medical Groups' Claims Do Not Fall Within the Scope of ERISA ......................... 4

      B.   The Medical Groups Lack ERISA Standing to Pursue the Claims Asserted ................... 7

  II.   *DAVILA* PRONG 2 – THE MEDICAL GROUPS' CLAIMS ARE EACH SUPPORTED
       BY INDEPENDENT LEGAL DUTIES ............................................................ 9

CONCLUSION..................................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**

*Aetna Health Inc. v. Davila*,
    542 U.S. 200 (2004)................................................................................................... passim

*Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Grp., Inc.*,
    187 F.3d 1045 (9th Cir. 1999) ......................................................................................... 8

*Centex Corp. v. Dalton*,
    840 S.W.2d 952 (Tex. 1992)........................................................................................... 12

*Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*,
    591 F.3d 1337 (11th Cir. 2009) ....................................................................................... 4

*Emerus Hosp. Partners, LLC v. Health Care Serv. Corp.*,
    41 F. Supp. 3d 695 (N.D. Ill. 2014) ................................................................................ 7

*Fremont Emergency Servs. (Mandavia), Ltd. v. UnitedHealthGroup, Inc.*,
    2020 WL 1970710 (D. Nev. Feb. 20, 2020) ................................................................. 11

*Hill v. Shamoun & Norman, LLP*,
    544 S.W.3d 724 (Tex. 2018)........................................................................................... 12

*Houston Home Dialysis, LP v. Blue Cross & Blue Shield of Tex.*,
    2010 WL 2562692 (S.D. Tex. June 4, 2018) ................................................................... 7

*Houston Med. Testing Servs., Inc. v. Mintzer*,
    417 S.W.3d 691 (Tex. App.—Houson [14th] 2013, no pet.).................................... 6, 11

*Kindred Hosps. Ltd. P'ship v. Aetna Life Ins. Co.*,
    2017 WL 2505001 (N.D. Tex. June 9, 2017) ................................................................. 6

*Lone Star OB/GYN Assocs. v. Aetna Health Inc.*,
    579 F.3d 525 (5th Cir. 2009) .................................................................................. 3, 5, 8

*Marin Gen. Hosp. v. Modesto & Empire Traction Co.*,
    581 F.3d 941 (9th Cir. 2009) ............................................................................. 2, 3, 8, 12

*McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*,
    857 F.3d 141 (2d Cir. 2017)........................................................................................... 12

*N.J. Carpenters & the Trs. Thereof v. Tishman Constr. Corp. of N.J.*,
    760 F.3d 297 (3d Cir. 2014)............................................................................................. 9

*Paragon Office Servs., LLC v. UnitedHealthGroup, Inc.*,
  2012 WL 1019953 ................................................................................................ 7

*Spring E.R., LLC v. Aetna Life Ins. Co.*,
  2010 WL 598748 (S.D. Tex. Feb. 17, 2010) ......................................................... 7, 9

*Tex. Oral & Facial Surgery, PA v. United Healthcare Dental Inc.*,
  2018 WL 3105114 (S.D. Tex. June 25, 2018) .......................................................... 6

*Williams v. UnitedHealthCare of Tex., Inc.*,
  2016 WL 11475281 (S.D. Tex. Jan. 13, 2016) ......................................................... 7

*Wurtz v. Rawlings Co., LLC*,
  761 F.3d 232 (2d Cir. 2014) .................................................................................. 10

## Statutes

TEX. INS. CODE § 1271.155(a) ..................................................................................... 9, 10

TEX. INS. CODE § 1301.0053(a) ................................................................................... 9, 10

TEX. INS. CODE § 1301.155(b) ..................................................................................... 9, 10

## Regulations

28 TEX. ADMIN. CODE § 3.3708(b)(1) .......................................................................... 11

Plaintiffs ACS Primary Care Physicians Southwest, P.A., Hill Country Emergency Medical Associates, P.A., Longhorn Emergency Medical Associates, P.A., Central Texas Emergency Associates, P.A., Emergency Associates of Central Texas, P.A., and Emergency Services of Texas, P.A. (collectively, the "Medical Groups") respectfully submit this Reply Memorandum of Law in Further Support of Their Motion to Remand to State Court (the "Motion") (Dkt. 10).  As shown in the Motion and reinforced below, the removal by Defendants UnitedHealthCare Insurance Company and UnitedHealthCare of Texas, Inc. (collectively, "United") to this Court was improper because there is no federal jurisdiction over the subject matter of this dispute.

## PRELIMINARY STATEMENT

As demonstrated in the Motion, the Medical Groups' state law claims for violation of the Texas Insurance Code, breach of implied-in-fact contract, and *quantum meruit* are not completely preempted by ERISA § 502(a)(1)(B).  Accordingly, the Court is without subject-matter jurisdiction and must remand the action to state court.  United's opposition brief ("Response") (Dkt. 14) fails to undermine this inescapable conclusion.  Putting aside United's refusal to address several of the core substantive arguments put forward in the Motion or to even attempt to distinguish the voluminous case law offered in support thereof, the half-hearted contentions United musters are plagued by a series of consistent, pervasive legal and logical fallacies.

First, United apparently maintains that the right to assert a claim for ERISA benefits—to the extent it exists here—somehow negates the Medical Groups' independent right to assert alternative claims arising from legal obligations separate and distinct from the terms of any ERISA plans.  As shown in the Motion, United's position is contrary to well-established precedent.  (Mot. at 15-16.)  Moreover, it defies common sense.  Imagine the following hypothetical:

Party A, an employee, executes a severance agreement with his employer, Party B.  The

1

severance agreement includes a non-disparagement provision.  Party A later issues a public

statement which is both defamatory and in violation of the non-disparagement clause.  In those

circumstances, Party B would be well within its rights to pursue the defamation claim while

foregoing the breach-of-contract claim.  And the mere fact that an actionable contractual breach

had occurred would not convert the defamation claim into a breach-of-contract claim.  Rather, the

two potential claims would be predicated upon independent breaches of separate and distinct legal

obligations, despite having arisen from a common factual nucleus.  So too here.  The Medical

Groups have elected to pursue claims for violation of the Texas Insurance Code, breach of implied-

in-fact contract, and *quantum meruit*.  That they could have asserted claims for ERISA benefits (if

true) does not affect their separate right to seek recovery based upon United's separate breaches

of non-ERISA duties.

Relatedly, United contends that because certain of the payments made were from ERISA-

governed health plans, any challenge by the Medical Groups to the rates paid must necessarily

amount to a dispute over ERISA benefit determinations.  But that is clearly wrong.  The Medical

Groups do not contend that benefit calculations were performed incorrectly under the terms of any

ERISA plans.  Rather, the Medical Groups seek ***additional*** compensation, pursuant to legal

obligations having nothing to do with the plan terms.  As the Ninth Circuit aptly explained in its

well-reasoned *Marin* decision:

> Th[e] payment was made to the Hospital in its capacity as an assignee of the
> patient's rights under his ERISA plan.  The Hospital is now seeking additional
> payment . . . . The Hospital does not contend that it is owed this additional amount
> because it is owed under the patient's ERISA plan.  Quite the opposite.  The
> Hospital is claiming this amount ***precisely because it is not owed under the***
> ***patient's ERISA plan***.  The Hospital is contending that this additional amount is
> owed based on its alleged oral contract with [defendant payor].

*Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 947 (9th Cir. 2009) (emphasis

added).

United's only response to cases like *Marin* and *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525 (5th Cir. 2009), is to feebly observe that they involve allegations of express contracts between providers and payors (oral in *Marin*; written in *Lone Star*).  (Resp. at 8-10.)  But even ignoring the slew of cases in which federal courts have held that out-of-network providers' claims are not preempted despite the absence of an express agreement (Mot. at 11-12), United's position misses the mark on its own terms.  An express contract is no *sine qua non* for avoiding complete ERISA preemption.  Neither *Lone Star*, *Marin*, nor any other cases so hold.  Rather, the significance of an express contract is that—as would be the case with any multitude of hypothetical legal obligations—it imposes upon the payor duties which, if breached, would entitle an injured provider to relief independent of the benefits afforded in an ERISA plan.  Equivalent duties exist here in the form of (1) a Texas statute regulating the rates which health insurance companies must pay to out-of-network emergency care providers, (2) an implied-in-fact contract between the Medical Groups and United (which, under applicable state law, stands on equal footing with an express contract), and (3) longstanding principles of equity enshrined in Texas law.  As such, the Medical Groups' claims are not grounded in ERISA.

In any event, formal application of the governing *Davila* framework merely confirms what is otherwise obvious from the face of the pleadings: that this is not an ERISA case.  Under *Davila*, complete preemption applies only where: (1) a plaintiff "could have brought his claims under ERISA § 502(a)(1)(B)," and (2) "no other independent legal duty . . . is implicated by a defendant's actions."  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004).  As shown in the Motion, neither element is satisfied here.  The Medical Groups could not have brought their claims under ERISA because they challenge only the rates of reimbursement required under a state statute, a contract, and state equitable principles, rather than the right to reimbursement provided by an ERISA plan

3

(Mot. at 9-14), and because they lack ERISA standing as to the claims asserted (Mot. at 16).  And those claims self-evidently implicate independent legal duties because they are grounded in state statute, contract, and equitable principles, rather than the terms of any ERISA plans.  (Mot. 16-17.)  Accordingly, the claims are not completely preempted.

Finally, the Medical Groups would note a consistent thread running through the Response: United's palpable skepticism as to the viability of the Medical Groups' claims.  United is entitled to its skepticism.  It certainly may dispute the veracity of the allegations, seek dismissal for failure to state a claim, and/or assert any number of affirmative defenses.  But these issues must be resolved at the appropriate juncture, by a court of competent jurisdiction.  The threshold question at this stage is not whether the Medical Groups' claims are meritorious, but whether, as pled, they amount to claims for ERISA benefits.  Because they do not, this Court's only proper course of action is to promptly remand the case to state court.

## ARGUMENT

I.      *DAVILA* PRONG 1 – THE MEDICAL GROUPS COULD NOT HAVE BROUGHT THEIR CLAIMS UNDER ERISA

### A.  The Medical Groups' Claims Do Not Fall Within the Scope of ERISA

The first inquiry under *Davila* Prong 1 is whether the claims asserted fall within the scope of ERISA § 502(a)(1)(B), *i.e.*, whether they amount to colorable claims for ERISA benefits.  *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1350 (11th Cir. 2009).  As explained in the Motion, courts applying *Davila* Prong 1 distinguish between disputes over the right to payment under the terms of an ERISA plan, which are generally preempted, and disputes over the appropriate rate of payment, which are not preempted.  (Mot. at 9-11.)  The present action is a rate-of-payment dispute, because the Medical Groups have specifically pled that they seek recovery only upon claims for reimbursement which United already has adjudicated as payable

4

and actually paid.  (Compl. ¶ 28; Am. Compl. ¶ 27.)  This alone should end the inquiry.

United maintains that the right-to-payment / rate-of-payment distinction "do[es] not provide the relevant analytical framework," because the Medical Groups are out-of-network providers (*i.e.*, there is no written provider agreement at issue).  (Resp. at 10-11.)  The Medical Groups addressed this flawed contention in the Motion, and their argument goes unrebutted in the Response.  (Mot. at 11-12.)  In short: the Fifth Circuit recognized the right-to-payment / rate-of-payment distinction in *Lone Star*.  (Mot. at 11 (citing *Lone Star*, 579 F.3d at 530-31).)  That case involved a dispute between a provider and payor who were subject to an agreement establishing reimbursement rates.  579 F.3d at 529.  The court held that, to the extent the provider's claims arose from independent duties contained within the agreement, they implicated the rate of payment and were not preempted.  *Id.* at 531.

United reads *Lone Star* to establish a blanket requirement: that unless the provider and payor share an express contract, a challenge to the reimbursement rates cannot constitute a non-preempted rate-of-payment dispute.  (Resp. at 10.)  But that is wrong.  The existence of a contract is a sufficient condition, not a necessary one.  As *Lone Star* makes clear, the real inquiry is whether the plaintiff's right to recover is dictated by the ERISA plan terms or by some other, independent legal obligation.[1]  *Id.*  And that distinction makes perfect sense, as the purpose of the complete

---

[1] *Davila* itself is illuminating on this point.  The *Davila* plaintiffs were ERISA plan members whose benefit requests had been denied.  542 U.S. at 204-05.  The plaintiffs sued under a state statute requiring plan administrators to exercise ordinary care in making benefit determinations. *Id.*  Critically, the statute provided an absolute defense where benefit denials were consistent with the governing plan terms.  *Id.* at 212-13.  Thus, while the plaintiffs nominally sought relief under state law, disposition of their claims inherently required an analysis of the plan terms to determine whether coverage existed.  In those circumstances, the Supreme Court logically concluded that the plaintiffs could not avoid ERISA's exclusive civil enforcement remedy by "relabeling" their ERISA claims as claims pursuant to a state statute.  *Id.* at 213-14.

preemption doctrine is to ensure that § 502(a)(1)(B) remains the exclusive civil enforcement

mechanism governing benefits disputes.  *Davila*, 542 U.S. at 208-09.  It is not to shield ERISA

plans from any conceivable liability based upon extrinsic legal obligations.[2]

In any event, as addressed at length in the Motion, the Medical Groups have alleged the

existence of a contract and asserted a claim for its breach.  (Mot. at 13-14.)  Under black letter

contract principles, an implied-in-fact agreement is every bit as effective and enforceable as an

express agreement.  *Houston Med. Testing Servs., Inc. v. Mintzer*, 417 S.W.3d 691, 698 (Tex.

App.—Houson [14th] 2013, no pet.).  As such, United's position on the necessity of a contract is

not merely erroneous, but academic.

United contends that "Plaintiffs do not allege Defendants made any express agreement or

representation about the benefits that would be paid," and that "[t]he only fact alleged in support

of the legal conclusion that an implied contract exists is that Plaintiffs treated patients covered by

the Plans."  (Resp. at 13.)  But that is not the case.  The Medical Groups expressly plead that the

Parties have demonstrated their mutual assent to an agreement requiring United to compensate the

Medical Groups at the usual and customary rate.  (Am. Compl. ¶¶ 21, 37.)  Such agreement

constitutes an enforceable contract, which United has breached.  United further responds that

---

The *Davila* facts stand in stark contrast with those alleged here.  Unlike the *Davila* plaintiffs, the Medical Groups are not challenging benefit denials.  And the Medical Groups' claims do not rest upon or otherwise necessitate an analysis of ERISA plan terms.

[2] The Medical Groups cite a multitude of cases in which federal district courts concluded that out-of-network providers' rate-of-payment claims were not completely preempted.  (Mot. at 11-12 (collecting cases)).  United's only response is to note that these cases are "principally from Florida and New Jersey," (Resp. at 11) as if that somehow diminishes their persuasive value.  Regardless, authority from Texas district courts is in accord.  *See, e.g., Tex. Oral & Facial Surgery, PA v. United Healthcare Dental Inc.*, 2018 WL 3105114 (S.D. Tex. June 25, 2018); *Kindred Hosps. Ltd. P'ship v. Aetna Life Ins. Co.*, 2017 WL 2505001 (N.D. Tex. June 9, 2017).

"Plaintiffs cannot avoid ERISA's preemptive effect merely by selecting a particular label for their state-law claim . . . ." (Resp. at 13.)  But the question is one of substance, not labels.  *Cf. Davila*, 542 U.S. at 212-14.  The Medical Groups have labeled their claim "Breach of Contract Implied in Fact" because they are actually alleging a breach of contract implied in fact.  United may dispute that the factual averments, as pled, support the elements of a breach-of-contract claim, or that the Medical Groups can ultimately succeed in adducing evidence sufficient to prove contract formation.  But neither question is material at this stage, as the substantive merits of Plaintiffs' claims are not presently at issue.

Because the Medical Groups allege that United has failed to pay the rates of reimbursement required by independent legal obligations, but have not challenged any right to reimbursement provided by the plan terms, their claims do not fall within the scope of ERISA and *Davila* Prong 1 is unsatisfied.[3]

### B.  The Medical Groups Lack ERISA Standing to Pursue the Claims Asserted

United maintains that the Medical Groups enjoy ERISA standing pursuant to assignments of benefits received from their patients.  (Resp. at 6-8.)  The Medical Groups addressed the

---

[3] United relies heavily upon several federal district court decisions.  All of these are easily distinguishable, as they either perform a conflict preemption analysis rather than a complete preemption analysis or involve denials of payment ("right-to-payment" disputes), rather than challenges to the rate of payment ("rate-of-payment" disputes). *See Houston Home Dialysis, LP v. Blue Cross & Blue Shield of Tex.*, 2010 WL 2562692, at *1-2 (S.D. Tex. June 4, 2018) (addressing motion to dismiss based on conflict preemption and not complete preemption, in case in which the plaintiff agreed that to the extent the claims related to an ERISA plan, they were preempted); *Spring E.R., LLC v. Aetna Life Ins. Co.*, 2010 WL 598748, at *5 (S.D. Tex. Feb. 17, 2010) (finding complete preemption where the provider's claim for breach of implied-in-fact contract challenged the denial of payment and where the implied contract, as alleged, incorporated the ERISA plans' coverage terms and exclusions); *Paragon Office Servs., LLC v. UnitedHealthGroup, Inc.*, 2012 WL 1019953, at *7 (right-to-payment dispute challenging benefit denials); *Emerus Hosp. Partners, LLC v. Health Care Serv. Corp.*, 41 F. Supp. 3d 695, 697 (N.D. Ill. 2014) (same); *Williams v. UnitedHealthCare of Tex., Inc.*, 2016 WL 11475281, at *1 (S.D. Tex. Jan. 13, 2016) (same).

assignment issue in the Motion. (Mot. at 14-16.) As explained previously, assignments of benefits are only relevant to the extent that a provider chooses to stand in the shoes of its patients and seek ERISA benefits. (Mot. at 15.) Where the provider elects not to travel under the assignments and instead asserts alternative claims premised upon independent duties, there is "no basis to conclude that the mere fact of assignment converts the Providers' claims into claims to recover benefits under the terms of an ERISA plan." *Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1052 (9th Cir. 1999). In other words, the critical question once again is whether the claims asserted, in substance, seek to recover benefits under the terms of an ERISA plan. The Fifth Circuit explicitly recognized as much in *Lone Star*:

> Lone Star clearly has standing to seek benefits under the terms of their patients' ERISA plans, as Lone Star's patients have assigned Lone Star their rights under those plans. The crucial question is whether Lone Star is in fact seeking benefits under the terms of the plan, or rights that derive from the independent basis of the contract . . . . [W]here the basis of the suit is entirely independent of the ERISA plan, and thus of the plan member, an assignment of benefits from the patient cannot confer standing.

579 F.3d at 529 n.3.

United contends that "Plaintiffs cannot avoid ERISA's preemptive effect by the simple expedient of now attempting to disavow the assignments under which they actually submitted their claims for reimbursement to Defendants." (Resp. at 7.) This argument misses the mark entirely. Plaintiffs are not "disavowing" the assignments. The assignments are simply irrelevant because they do not bear on Plaintiffs' independent, non-ERISA claims. As in *Marin*, Plaintiffs seek additional compensation, separate and apart from the ERISA benefits. *Marin*, 581 F.3d 941 at 947. Plaintiffs do not claim derivative entitlement to this additional compensation based upon any rights contained in their patients' ERISA plans. Rather, they allege that the obligations are owed to them directly and stem from United's breach of duties contained in a state statute, a contract, and basic equitable principles. The assignments cannot confer ERISA standing to redress these

8

independent wrongs.  As such, *Davila* Prong 1 is unsatisfied for this additional reason.[4]

## II.    *DAVILA* PRONG 2 – THE MEDICAL GROUPS' CLAIMS ARE EACH SUPPORTED BY INDEPENDENT LEGAL DUTIES

*Davila* Prong 2 looks to whether an independent legal duty is implicated by the defendant's actions.  542 U.S. at 210.  "A legal duty is independent if it is not based on an obligation under an ERISA plan, or it would exist whether or not an ERISA plan existed."  *N.J. Carpenters & the Trs. Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 303 (3d Cir. 2014) (quotations omitted).  Accordingly, "if nobody needs to interpret the plan to determine whether that duty exists, then the duty is independent."  *Id.* (quotations omitted).   Again, the Medical Groups' claims are independent because they seek recovery pursuant to state law duties having nothing to do with any rights contained in their patients' ERISA plans and do not necessitate a review of the plans.[5]

### Texas Insurance Code

Regarding the statutory claim, the Medical Groups seek recovery pursuant to provisions of the Texas Insurance Code obligating payors to reimburse out-of-network emergency care providers at a "usual and customary" rate or "agreed" rate.  TEX. INS. CODE §§ 1271.155(a); 1301.0053(a); 1301.155(b).  This payment obligation plainly arises from the statutes alone.  *See*

---

[4] United offers a misleading characterization of the *Davila* inquiry.  As per United: "[t]he first prong of the *Davila* test does not ask whether Plaintiffs **are** asserting an ERISA claim, but whether 'at some point in time, [they] **could have** brought [their] claim under ERISA § 502(a)(1)(B).'" (Resp. at 7 (quoting *Davila*, 542 U.S. at 210) (emphasis in original).)  But *Davila* Prong 1 does not look to whether the plaintiff could have asserted any hypothetical ERISA claim.  Rather, it asks whether the **claim actually asserted**, however labeled, substantively amounts to an ERISA claim. 542 U.S. at 210-14.

[5] This case is unlike *Davila,* where a review of the plan coverage provisions was dispositive of the state statutory claim.  542 U.S. at 212-13.  It is equally distinguishable from *Spring,* where the alleged payor/provider contract incorporated the plan terms by reference.  2010 WL 598748, at *5-6.  Here, the Medical Groups' claims can be litigated to finality without any occasion for a review of ERISA plan terms.

*Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 243 (2d Cir. 2014) ("[T]he independent legal duty arises from [state statute], which prohibits defendants from seeking subrogation or reimbursement from settling parties.  The duty is independent because it is unrelated to whatever plaintiffs' ERISA plans provide about reimbursement.").

United again focuses on a separate clause in § 1301.155(b) (the "PPO Statute"), requiring the payor to allow benefits "at the preferred level" where an insured suffering a medical emergency cannot reasonably reach a preferred provider and must instead seek care out-of-network.  (Resp. at 15.)  This clause was crucial to the decision in *Hill Country*, which ascribed to it considerable unmerited significance.  *See* 1:19-CV-548 (RP), Dkt. 18 at 9 (W.D. Tex. Dec. 10, 2019).  The Motion comprehensively addressed *Hill Country*'s erroneous statutory construction.  (Mot. at 18-20.)  United now retorts that the PPO Statute's "usual and customary rate" clause[6]—the only clause actually at issue—was added in a recent amendment and may not have been in effect when the Medical Groups' claims accrued.  (Resp. at 16 n.6.)  That argument fails for several reasons:

First, the Motion analyzed the PPO Statute's language in the context of demonstrating that *Hill Country* had misconstrued that language.  (Mot. at 19-20.)  And regardless of when the amended version of the statute actually went into effect, the *Hill Country* Court apparently believed that it governed that case, as the full text of the amended statute is quoted in the court's order.  *Hill Country*, 1:19-CV-548 (RP), Dkt. 18 at 9.  Second, that "at the usual and customary rate or at an agreed rate" was recently added to the statute actually reinforces the Medical Groups' argument, which is that this clause and the "preferred level of benefits" clause impose separate and distinct

---

[6] United again ignores that "preferred level of benefits" applies only to PPO plans.  Such language is absent from the HMO and EPO Statutes, which refer only to the "usual and customary" rate or "agreed" rate.  TEX. INS. CODE §§ 1271.155(a); 1301.0053(a).

obligations upon payors.  The "usual and customary rate" clause alone serves as the predicate for the Medical Groups' statutory claim.  If this requirement were not in effect during the relevant time period, that would afford United a defense on the merits.  But it would not somehow breathe relevance into the separate "preferred level of benefits" requirement.[7]

## Breach of Implied-in-Fact Contract

The Medical Groups' implied contract claim is independent for the reasons already discussed.  United concedes that payor/provider contracts generally create independent legal duties, but it again seeks to carve out an exception for implied contracts.  (Resp. at 16.)  As addressed in the Motion, multiple district courts have remanded payor/provider disputes based upon implied contracts.  *See, e.g., Fremont Emergency Servs. (Mandavia), Ltd. v. UnitedHealthGroup, Inc.*, ___ F. Supp. 3d ___, 2020 WL 1970710, at *3 (D. Nev. Feb. 20, 2020). These courts correctly recognize that the distinction between implied and express contracts exists in the manner (and evidence) of formation, not the effectiveness of the agreement.  *Mintzer*, 417 S.W.3d at 698.  United's argument amounts to a premature challenge on the factual merits of the contract claim, which, respectfully, the Court may not consider at this stage of the proceedings.

## *Quantum Meruit*

Finally, United bizarrely contends that "the Motion to Remand includes virtually no argument or authorities attempting to rebut that Plaintiffs' quantum meruit claim is completely preempted . . . ."  (Resp. at 18.)  It adds that "Plaintiffs cannot rebut the argument that, at a minimum, their quantum meruit claim is completely preempted, the Motion to Remand must be denied on this basis alone."  (Resp. at 18 n.7.)  As should have been evident from the Motion,

---

[7] In any event, United overlooks that the Texas Administrative Code has long required PPOs to compensate out-of-network emergency care providers "at the usual or customary charge."  28 TEX. ADMIN. CODE § 3.3708(b)(1).

11

Plaintiffs' arguments as to the right-to-payment / rate-of-payment distinction and the absence of ERISA standing apply with equal force to the *quantum meruit* claim. That claim's failure to satisfy *Davila* Prong 1 is dispositive, as the *Davila* Test is conjunctive. A claim is completely preempted only if both prongs are satisfied. *Marin*, 581 F.3d at 947.

Regarding *Davila* Prong 2, the Motion noted that the *quantum meruit* claim self-evidently arises from independent obligations imposed by Texas common law, rather than the terms of an ERISA plan. (Mot. at 20 n.10.) At its essence, the *quantum meruit* claims merely alleges that the Medical Groups rendered valuable services to United, and that—in the absence of a formal contract[8]—principles of equity require United to pay fair value for those services. *Hill*, 544 S.W.3d at 732-33. The obligation is, accordingly, independent of the plans. *See McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 150 (2d Cir. 2017) (finding that *Davila* Prong 2 was unsatisfied as to an equitable promissory-estoppel claim because the claim "arises not from an alleged violation of some right contained in the plan, but rather from a freestanding state-law duty grounded in conceptions of equity and fairness.")[9]

As such, all three of the Medical Groups' claims are grounded in independent legal duties, and *Davila* Prong 2 is accordingly unsatisfied.

---

[8] United notes that "[a] party generally cannot recover under a quantum-meruit claim when there is a valid contract covering the services or materials furnished." (Resp. at 14 n.5 (quoting *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 733 (Tex. 2018)).) While that may be a correct statement of substantive law, pleading in the alternative is permitted. *See Centex Corp. v. Dalton*, 840 S.W.2d 952, 955 (Tex. 1992) ("When it is possible a contract claim may be held invalid, it is somewhat standard practice for a party to plead an alternative quantum meruit claim."). That is especially important here, as United is challenging the contract claim.

[9] The *Marin* plaintiff asserted a *quantum meruit* claim in addition to its oral and implied contract claims. 581 F.3d at 943. The Ninth Circuit performed its *Davila* inquiry, determined that complete preemption failed, and ordered the action remanded to state court, without any occasion for a particularized analysis of the *quantum meruit* claim.

## CONCLUSION

For all of the foregoing reasons, the Court should grant the Motion and remand this action to Texas state court.

Respectfully submitted,

/s/ John Zavitsanos
**JOHN ZAVITSANOS**
Texas Bar No. 22251650
Federal ID No. 9122
jzavitsanos@azalaw.com
**SAMMY FORD IV**
Texas Bar No. 24061331
Federal ID No. 950682
sford@azalaw.com
**MICHAEL KILLINGSWORTH**
Texas Bar No. 24110089
Federal ID No. 950682
mkillingsworth@azalaw.com
**AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, PC.**
1221 McKinney, Suite 2500
Houston, Texas 77010
T: 713-655-1101
F: 713-655-0062

**ALAN D. LASH***
Florida Bar No. 510904
alash@lashgoldberg.com
**JUSTIN C. FINEBERG***
Florida Bar No. 0053716
jfineberg@lashgoldberg.com
**JONATHAN E. SIEGELAUB***
Florida Bar No. 1019121
jsiegelaub@lashgoldberg.com
**LASH & GOLDBERG LLP**
Miami Tower, Suite 1200
100 Southeast Second Street
Miami, Florida 33131
T: 305-347-4040

* *Pro Hac Vice* applications to be submitted

**ATTORNEYS FOR PLAINTIFFS**

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 29, 2020, a true and correct copy of this document has been filed electronically via the Court's CM/ECF filing system and subsequently all counsel in this matter deemed to accept service electronically will be notified via the Court's CM/ECF filing system.

Andrew G. Jubinsky
Donald Colleluori
FIGARI + DAVENPORT LLP
901 Main Street, Suite 3400
Dallas, Texas 75202
*Counsel for Defendants*

By: */s/ John Zavitsanos*
**John Zavitsanos**

14